**FILED**
**2nd JUDICIAL DISTRICT COURT**
**Bernalillo County**
**12/17/2018 11:59 AM**
**James A. Noel**
**CLERK OF THE COURT**
**Latoya Grayes**

**STATE OF NEW MEXICO**
**BERNALILLO COUNTY**
**SECOND JUDICIAL DISTRICT COURT**

**AMERICAN FEDERATION OF STATE,**
**COUNTY AND MUNICIPAL EMPLOYEES,**
**NEW MEXICO COUNCIL 18, LOCAL 2499,**
**AFL-CIO, ERIC ALLEN, STEPHEN PERKINS,**
**PATRICK GARCIA, and ALEXA CAVIS,**

        **Plaintiffs,**

**v.**                                **Case No.** _____D-202-CV-2018-09150_____

**BOARD OF COUNTY COMMISSIONERS**
**FOR BERNALILLO COUNTY,**
**and RALPH FERNANDEZ, GREG REES,**
**TOM RUIZ, PHILLIP GREER, GREGORY**
**RICHARDSON, ERIN THOMAS**
**aka ERIN RILEY, MANUEL GONZALES III,**
**RUSSELL BROYLES & JOHN DYKES**
**(all individuals in their individual capacities),**

        **Defendants.**

## COMPLAINT FOR VIOLATIONS OF FIRST AMENDMENT FREE-SPEECH AND ASSOCIATIONAL RIGHTS UNDER 42 U.S.C. § 1983 AND FOR VIOLATIONS OF THE NEW MEXICO WHISTLEBLOWER PROTECTION ACT

COME NOW Plaintiffs American Federation of State, County and Municipal Employees, New Mexico Council 18, Local 2499, AFL-CIO ("AFSCME Local 2499"), Eric Allen, Stephen Perkins, Patrick Garcia, and Alexa Cavis, by and through their counsel of record, Youtz & Valdez, P.C. (Shane Youtz, Stephen Curtice and James Montalbano), and bring this action under 42 U.S.C. §1983 for damages arising from Defendants' violation of their rights under the First Amendment to associate with a labor organization and to engage in protected free-speech activities, and for violations of the New Mexico Whistleblower Statute.

EXHIBIT A

**Introduction**

1.      Plaintiffs bring this action to seek legal redress for Defendants' concerted and ongoing campaign against employees who exercise their constitutional rights of free speech and association with a labor organization, and who blow the whistle on unlawful or improper acts of the County.  Sadly, Defendants' anti-union animus is not conjecture — it exists, as determined by the Bernalillo County Labor Board.  In 2015 the County was caught red-handed (by Plaintiff Allen) attempting to engage in an actual conspiracy to recruit and train bargaining unit members to "act as a counter weight *against the influence of the Union.*"  Incredibly, the County instructed all members of management, in writing, to recruit,

> COs who will carry the message (to act as a counter weight *against the influence of the Union)* given to them.  MDC should consider selecting CO's who fit the definition of 'mavens' and 'salesmen.'  Mavens are individuals who take on the responsibility of spreading the word throughout the organization about change because of their knowledge, social skills, and ability to communicate.  Salesmen are individuals have an undefinable trait that goes beyond what they say, which makes others want to agree with them.

These "mavens" and "salesmen" were sought to deter employees from heeding the guidance of Plaintiff Eric Allen and Plaintiff Stephen Perkins, in their roles as officers of the Union.  But it didn't work; the County got caught and the Labor Board entered a clear and definitive finding, holding that such activities were purposefully illegal and ordered that the County cease all such activities.  Despite that order, and as detailed below, the conduct persisted.

**Facts**

I.      **Parties, Jurisdiction and Venue**

2.      Plaintiff Eric Allen is a former employee of Bernalillo County, working at the Metropolitan Detention Center as a Correctional Officer at the rank of Sergeant until on or about March 13, 2018.  At all times relevant, Plaintiff Allen was/is a resident of Bernalillo County.

EXHIBIT A

3.      Plaintiff Stephen Perkins is a current employee of Bernalillo County, although he is currently on administrative leave.  He works at the Metropolitan Detention Centers as a Correctional Officer at the rank of Lieutenant.  At all times relevant, Plaintiff Perkins was/is a resident of Bernalillo County.

4.      Plaintiff Patrick Garcia is a current employee of Bernalillo County, working at the Metropolitan Detention Center as a Correctional Officer at the rank of Sergeant.  At all times relevant, Plaintiff Garcia was/is a resident of Bernalillo County.

5.      Plaintiff Alexa Cavis is a former employee of Bernalillo County.  She worked at the Metropolitan Detention Center as a Correction Officer at the rank of Sergeant.  At all times relevant, Plaintiff Cavis was/is a resident of Bernalillo County.

6.      Plaintiff AFSCME Local 2499 is a labor organization and exclusive representative, as those term are defined in Section 4 of the Public Employee Bargaining Act (NMSA, 1978 § 10-7E-4(I & L) (2003)).  Plaintiff AFSCME Local 2499 brings this action both in its own capacity to address the harm done to the Union as a result of the retaliation against its members described herein, all of which have a chilling effect on participation in the Union, and in its associational standing capacity to represent those other members who have, or may be shown to have, suffered reprisals of a similar kind.

7.      Defendant Board of County Commissioners of Bernalillo County ("County") is a political subdivision of the State of New Mexico.

8.      Defendant Ralph Fernandez is the current Chief of the Metropolitan Detention Center, having taken over after Defendant Rees retired.  Prior to that, he was the Assistant Chief of Security.  At all times relevant, and in all actions described herein, he was acting under the color of state law.  He is being sued in his individual capacity.

3

EXHIBIT A

9.      Defendant Greg Rees was the Chief of the Metropolitan Detention Center from August 7, 2017, until his retirement on November 2, 2018.  At all times relevant, and in all actions described herein, he was acting under the color of state law.  He is being sued in his individual capacity.

10.     Defendant Tom Ruiz was the interim Chief of the Metropolitan Detention Center from July 2016 through August 7, 2017.  At all times relevant, and in all actions described herein, he was acting under the color of state law.  He is being sued in his individual capacity.

11.     Defendant Phillip Greer was the Chief of the Metropolitan Detention Center from around January 2016 until his resignation in October of 2016.  At all times relevant, and in all actions described herein, he was acting under the color of state law.  He is being sued in his individual capacity.

12.     Defendants Fernandez, Rees, Ruiz and Greer are responsible for, and involved in, disciplinary decisions on behalf of the MDC.

13.     Defendant Gregory Richardson was, at all times relevant, the Deputy Chief of Operations of the Metropolitan Detention Center.  At all times relevant, and in all actions described herein, he was acting under the color of state law.  He is being sued in his individual capacity.

14.     Defendant Erin Thomas (aka Erin Riley) is the Training Coordinator of the Metropolitan Detention Center.  At all times relevant, and in all actions described herein, she was acting under the color of state law.  She is being sued in her individual capacity.

15.     Together, Defendants Fernandez, Rees, Ruiz and Greer, Richardson and Thomas are referred to herein as "Individual MDC Defendants."

EXHIBIT A

16.     Defendant Manuel Gonzales III is the current Sheriff of the Bernalillo County Sheriff's office, and in that capacity oversees employees who investigate alleged crimes and recommend charges be brought.  At all times relevant, and in all actions described herein, he was acting under the color of state law.  He is being sued in his individual capacity.

17.     Defendant Russell Broyles is a Sergeant with the Bernalillo County Sherriff's Department, and was responsible for investigating and recommending charges be brought against Plaintiff Eric Allen.  At all times relevant, and in all actions described herein, he was acting under the color of state law.  He is being sued in his individual capacity.

18.     Defendant John Dykes is a Deputy Class with the Bernalillo County Sherriff's Department, and was responsible for investigating and recommending charges be brought against Plaintiff Stephen Perkins.  At all times relevant, and in all actions described herein, he was acting under the color of state law.  He is being sued in his individual capacity.

19.     Together, Defendants Gonzales III, Broyles and Dykes are refereed to herein as "Individual BCSO Defendants."

20.     This Court has personal jurisdiction over Defendants and subject matter jurisdiction over the suit.

21.     Venue is proper in this Court.  See NMSA 1978, § 38-3-1(A) (1988).

**II.     General Factual Allegations**

22.     In 2015 the County was caught red-handed (by Plaintiff Allen) attempting to engage in an actual conspiracy to recruit and train bargaining unit members to "act as a counter weight against the influence of the Union."  Incredibly, the County instructed all members of management, in writing, to recruit,

> COs who will carry the message (to act as a counter weight against the influence of the Union) given to them.  MDC should consider selecting CO's who fit the definition of

5

EXHIBIT A

'mavens' and 'salesmen.' Mavens are individuals who take on the responsibility of spreading the word throughout the organization about change because of their knowledge, social skills, and ability to communicate. Salesmen are individuals have an undefinable trait that goes beyond what they say, which makes others want to agree with them.

23.     These "mavens" and "salesmen" were sought to deter employees from heeding the guidance of Plaintiff Eric Allen and Plaintiff Stephen Perkins, in their roles as officers of the Union. The Labor Board entered a clear and definitive finding, holding that such activities were purposefully illegal and ordered that the County cease all such activities.

24.     In newspaper accounts, various County officials have publicly blamed AFSCME Local 2499 and certain of the named Plaintiffs for some of the problems which have plagued the Metropolitan Detention Center.

25.     As the following facts relating to the Plaintiffs demonstrate, Defendant County has retaliated against the individual Plaintiffs for their whistleblowing activities, and the Individual MDC and BCSO Defendants, separately or in concert, have retaliated against the individual Plaintiffs for exercising their First Amendment rights of free-speech and association with the Union. That is, despite the Labor Board order, Defendants continued their pattern of retaliation against anyone who expresses support of, or associates with, the Union.

**A.     Eric Allen**

26.     Plaintiff Eric Allen is the Vice President of AFSCME Local 2499, and has been since approximately 2007.

27.     In 2009, Defendant County attempted to suspend, and then to terminate the employment of, Plaintiff Allen. Both attempts were overturned in arbitration.

6

EXHIBIT A

28.     Plaintiff Allen was a vocal supporter of the Union and of the employees in the bargaining unit.  Defendants (individual and the County) were all aware of his support of the Union.

29.     On or about September 15, 2017, Eric Allen was given a notice of intent to terminate his employment.  The notice was based on three reasons: (1) a use of force incident involving Susie Chavez from September of 2015; (2) a use of force incident involving Joe Ray Barela from December of 2015; and (3) communications he made from February 2, 2015, through November 21, 2016, in which he criticized management for their mismanagement of the facility and for the adoption of an unsafe use of force policy.

30.     The communications listed in the notice of intent to terminate were: (1) made in Plaintiff Allen's capacity as an officer of AFSCME Local 2499, (2) made to members of AFSCME Local 2499 and members of the bargaining unit it represents, (3) addressed mismanagement of the facility and dangerous aspects of the proposed use of force policy.

31.     These communications were protected under the Whistleblower Protection Act and the First Amendment.

32.     The investigations and initial reports of each use of force incident concluded that none of the officers involved in either incident use excessive force.  Yet, in the case of Plaintiff Eric Allen, those determinations were reversed by management of MDC, including one or more of the Individual MDC Defendants.

33.     In fact, Eric Allen was only one of nine officers involved in the two use of force incidents.  He was neither the first nor the only officer to use force in either case.  Yet, he was the only employee disciplined for either incident.

7

EXHIBIT A

34.    During the Union arbitration challenging his termination, the County's own use of force expert, Daniel Cafferkey, admitted in his testimony that he could "not come up with a rational explanation" for the fact that Plaintiff Eric Allen was the only employee who received any discipline for the incidents.

35.    The Individual MDC Defendants, and the Individual BCSO Defendants, separately or in concert, went so far as to cause criminal charges to be brought against Plaintiff Eric Allen.  He was acquitted after a jury trial of the most serious charge, and the state filed a nolle prosequi for the lesser-included offense.

36.    The Individual MDC Defendants, separately or in concert, referred the matter to the Sheriff's Department in retaliation for Plaintiff Allen's active advocacy on behalf of the Union and his association with the Union.  The Individual BCSO Defendants, separately or in concert, sought criminal prosecution in retaliation for Plaintiff Perkins's active advocacy on behalf of the Union and his association with the Union, or in furtherance of the Individual MDC Defendants' retaliation.

**B.    Stephen Perkins**

37.    Plaintiff Stephen Perkins is the President of AFSCME Local 2499, and has been so from 2001-2005 and again from 2007 to the present.

38.    In 2009, the County placed Plaintiff Perkins on administrative leave for approximately ten and one half months based on allegations that had not been substantiated. However, the County never served any notice of intent to discipline Plaintiff Perkins, and ultimately he was returned to work with no discipline.

8

EXHIBIT A

39.     Plaintiff Perkins, in his capacity as President of AFSCME Local 2499, has been outspoken in his support for the Union and his critique of MDC and County Management.  He has been quoted in multiple newspaper articles regarding the same.

40.     In late 2017 or early 2018, Plaintiff Perkins, on behalf of AFSCME Local 2499, presented a request to the Board of County Commissioners that MDC Management be placed under the Sherriff's department due to the mismanagement and lack of leadership at MDC.

41.     On or about August 27, 2018, Plaintiff Perkins was listed as a witness on behalf of the Union and Plaintiff Allen for the arbitration regarding the termination of Plaintiff Allen's employment to testify regarding the role of Union communiques to its membership.

42.     Although he never received a target letter, Plaintiff Perkins later discovered that he had been indicted on November 16, 2018.  As the following will show, the charges are absurd and the actions taken by the County, the Individual MDC Defendants, and the Individual BCSO Defendants were pretext and in retaliation for Plaintiff Perkins Whistleblowing activities and exercise of his First Amendment rights.

43.     Upon information and belief, MDC Management, including some of the Individual MDC Defendants, were provided a copy of the indictment on or about November 16, 2018.  However, no employee of the County notified Plaintiff Perkins about the indictment.

44.     The November 16, 2018, indictment related to an event on or about January 15, 2018.  During that event, Plaintiff Perkins was called to handle a situation where an inmate scheduled for release claimed that he had been thrown from a transport van by another officer and was hurt in the process.

EXHIBIT A

45.     Consistent with MDC Policy and his training, Plaintiff Perkins took the inmate to medical for evaluation.  In fact, Plaintiff Perkins's training was to take any inmate at MDC claiming injury to medical for evaluation as soon as practicable.

46.     MDC policy does not allow an inmate to be released directly from the facility, unless transportation arrives or the inmate is transported downtown.  Exercising his judgment, and consistent with his training, Plaintiff Perkins did not allow the inmate to be transported downtown in the company of the same officer he previously accused of injuring him.  As a result, the inmate had to wait for the next transport.

47.     Plaintiff Perkins gave the inmate the option of staying in the holding cell or obtaining a bed in the housing units.  The inmate elected a bed in the housing units.  Because MDC policy requires that all people in the housing units be active in the EJS inmate management system, Plaintiff Perkins had the inmate's previous booking reactivated.

48.     Although everything Plaintiff Perkins did on January 15, 2018, was consistent with MDC Policy and his training, the Individual BCSO Defendants caused a grand jury to indict Plaintiff Perkins for two fourth-degree felonies.

49.     At no point did Plaintiff Perkins receive any notice of administrative investigation regarding the January 15, 2018, event, which notice is required by the collective bargaining agreement.

50.     Neither a target letter nor notice of the arraignment were delivered by anyone from the County to Plaintiff Perkins's current address, even though it is known by the County.  Rather, it was addressed to a previous address, but without the apartment number.  The notice of arraignment was returned to the Court undeliverable with an "insufficient address."

EXHIBIT A

51.     As a result of the failure to notify Plaintiff Perkins of the arraignment, he did not appear for his arraignment, and a warrant was issued for his arrest.  Upon information and belief, the Individual MDC defendants were aware of the notice of arraignment, but failed to inform Plaintiff Perkins of the same.  Upon information and belief, after the warrant was issued, individuals within the County issued a press release about that fact.

52.     The Individual MDC Defendants, separately or in concert, referred the matter to the Sheriff's Department in retaliation for Plaintiff Perkins's active advocacy on behalf of the Union and his association with the Union.  The Individual BCSO Defendants, separately or in concert, sought criminal prosecution in retaliation for Plaintiff Perkins's active advocacy on behalf of the Union and his association with the Union, or in furtherance of the Individual MDC Defendants' retaliation.

**C.     Patrick Garcia**

53.     Plaintiff Patrick Garcia has been employed by the County as a Corrections Officer since 2006.  He currently holds the rank of Sergeant, having been promoted in October, 2017. Until very recently, he has been the Defensive Tactics Instructor in addition to his other duties.

54.     Plaintiff Garcia is a member of AFSCME Local 2499.

55.     On or about August 27, 2018, Plaintiff Garcia was listed as a witness on behalf of the Union and Plaintiff Allen to testify as a certified instructor through NM DPS at the arbitration regarding the termination of Plaintiff Eric Allen's employment.

56.     On or about the week of September 10, 2018, Plaintiff Garcia approached Defendant Richardson to notify him that he would be testifying in the Eric Allen arbitration. During that conversation, Defendant Richardson called over counsel for the County, George Heidke, who told Plaintiff Garcia he did not have to testify if he did not want to.  During that

11

EXHIBIT A

conversation, Plaintiff Garcia indicated that during the time of the incidents and considering the policies and training in place, he could not say that Eric Allen was in the wrong or had used excessive force.

57.     A few days after this discussion, on or about September 14, 2018, Defendant Richardson called Plaintiff Garcia into its office.  Defendant Richardson instructed Plaintiff Garcia to watch a video of a local news story regarding a use of force incident involving Correctional Officer Orona three years earlier.  Plaintiff Garcia had testified in the arbitration hearing regarding the discipline Officer Orona had received (which discipline was reversed by the arbitrator).  After the video finished, Defendant Richardson pulled out a highlighted copy of the transcript of Plaintiff Garcia's testimony in that case and questioned him for about an hour about that prior testimony, trying to find fault with it.

58.     At the close of the meeting, Defendant Richardson told Plaintiff Garcia that he was one of the best, if not the best, Defensive Tactics Instructors.  (Indeed, Defendant Garcia testified under oath at the Eric Allen arbitration that Plaintiff Garcia was the best instructor at the facility).  He further said that they were hoping to continue using Plaintiff Garcia as a Defensive Tactics Instructor, but that he wanted to meet with him "to see where you're at."

59.     A few days later, on or about September 18, 2018, Defendant Erin Thomas (formerly known as Erin Thomas) walked into Plaintiff Garcia's office and asked him if anyone had spoken to him about his role as instructor.  She then proceeded to tell him that they did not need him as a Defensive Tactics instructor and that effective September 21, 2018, she would not be using him for the training program.  This was a highly unusual decision, in that the County was currently mid-program, and Plaintiff Garcia had actually wrote the training materials the County was using.

12

EXHIBIT A

60.     Defendant Thomas informed Plaintiff Garcia that he was needed to provide supervision to the Psychiatric Acute Care day shift, despite the fact that its is smallest unit in the facility, and other Defensive Tactic Instructors worked line positions that have a greater need for supervision.

61.     As a result of his removal as a Defensive Tactics Instructor, Plaintiff Garcia has lost tangible employment benefits, and has suffered a loss of reputation that will negatively impact his career.

62.     On September 24, 2018, Plaintiff Garcia testified at the beginning of Eric Allen arbitration regarding the acts of Defendants Thomas and Richardson described above.

63.     Last week, Plaintiff Garcia received discipline in the form of a verbal warning for an incident that occurred nearly a year prior.  This was the first form of discipline he had received in his 18-year career as a correctional officer in this state.  He also received three additional notices of investigation for other potential disciplinary matters.

64.     All of the discipline is pretextual, and done to retaliate against Plaintiff Garcia for his actions and testimony.

65.     By the foregoing, the Individual MDC Defendants, separately or in concert, retaliated against Plaintiff Garcia for his (1) communicating, through his testimony in the Eric Allen arbitration, about the County's violations of law, and (2) his association with the Union.

**D.     Alexa Cavis**

66.     Plaintiff Alexa Cavis was hired by the County in 2010.  Since coming off of her probationary period in 2011, she has been a member of AFSCME Local 2499.

EXHIBIT A

67.     On or about April of 2017, Plaintiff Cavis was elected to an officer position within AFSCME Local 2499, specifically a Trustee.  As soon as the election was completed, Plaintiff Perkins emails the County to identify all elected officers.

68.     On or about April 25, 2016, Plaintiff Cavis was asked to participate in an investigatory interview regarding a statement she had previously given regarding a use of force incident.  During this interview, she asked for a Union representative, as is her right under *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975).

69.     The County denied her the right to have a Union representative present during this interview, and threatened her with discipline for even asking for a Union representative.

70.     On or about December 6, 2016, Plaintiff AFSCME Local 2499, on Plaintiff Cavis' behalf, filed a "Prohibited Practices Complaint" with the Bernalillo County Labor-Management Relations Board.

71.     The matter was finally scheduled for hearing on or about July 23, 2018.  Plaintiff Cavis testified at this hearing regarding the County's illegal acts.

72.     At the conclusion of the hearing, the Board announced its decision, finding that the County had violated the Labor Management Relations Ordinance, and ordered that all relief sought in the Complaint was to be provided.

73.     On or about April 13, 2018, Plaintiff Cavis was placed on administrative leave and provided a notice of intent to discipline her for three use of force incidents dating back to April of 2016, September of 2016, and February of 2017.

74.     On or about August 10, 2018, approximately two and one-half weeks following the labor board hearing, the County (through Defendant Fernandez) terminated the employment

EXHIBIT A

of Plaintiff Cavis, allegedly for these two-year old use of force incidents (one of which was the

subject of the Prohibited Practice Complaint).

75.     Ironically, shortly after Plaintiff Cavis was placed on administrative leave, the

County published the results of the Lieutenant's promotional process (which involves a written

test, an oral interview, and a personnel file review).  Plaintiff Cavis was number one on the list

(out of ten), meaning that she had performed better than all other applicants and was first in line

for promotion to Lieutenant.

76.     In actuality, Individual MDC Defendants, separately or in concert, terminated

Plaintiff Cavis's employment in retaliation for her: (1) communicating, through the Prohibited

Practices Complaint, about the County's violations of law, and (2) her association with the

Union.

## Causes of Action

**Count I:  Violations of Plaintiffs' First Amendment**
**Right to Associate with the Union (pursuant to 42 U.S.C. § 1983)**
**(against Individual MDC Defendants and Individual BCSO Defendants)**

77.     Plaintiffs re-allege the foregoing paragraphs as though fully set forth herein.

78.     The Individual Plaintiffs have a constitutional right to associate with a labor

union, such as AFSCME Local 2499, under the First Amendment to the United States

Constitution.

79.     Since at least 1990, and probably much earlier, it has been "clearly established"

that retaliating against an employee for participating in a union violates the First Amendment.

As such, Individual Defendants are not entitled to the defense of qualified immunity.  *See Morfin*

*v. Albuquerque Public School*, 906 F.2d 1434 (10th Cir. 1990).

EXHIBIT A

80.    As detailed above, the individual Plaintiffs have all exercised their right to associate with AFSCME Local 2499.

81.    As detailed above, the Individual MDC Defendants and the Individual BCSO Defendants, acting under color of state law, deprived Plaintiffs of this right by retaliating against them for its exercise.

82.    As a direct and proximate result of this deprivation, Plaintiffs have suffered damages in an amount to be determined at trial.

83.    The Defendants' actions and omissions were intentional, willful, wanton and in reckless disregard of the Plaintiffs' rights and entitle the Plaintiffs to an award of punitive damages in an amount to be determined by the finder of fact.

### Count II:  Violations of Plaintiffs' First Amendment
### Right of Speech on Matters of Public Concern (pursuant to 42 U.S.C. § 1983)
### (against Individual MDC Defendants and Individual BCSO Defendants)

84.    Plaintiffs re-allege the foregoing paragraphs as though fully set forth herein.

85.    The Individual Plaintiffs have a constitutional right to speak on matters of a public concern under the First Amendment to the United States Constitution.

86.    As detailed above, the Individual Plaintiffs exercised their right to speak on matters of public concern.

87.    As detailed above, the Individual MDC Defendants and the Individual BCSO Defendants, acting under color of state law, deprived Plaintiffs of this right by retaliating against them for its exercise.

88.    As a direct and proximate result of this deprivation, Plaintiffs have suffered damages in an amount to be determined at trial.

16

EXHIBIT A

89.    Since at least 1990, and probably much earlier, it has been "clearly established" that retaliating against an employee for speaking on a matter of public concern violates the First Amendment.  As such, Individual Defendants are not entitled to the defense of qualified immunity.  *See Morfin v. Albuquerque Public School*, 906 F.2d 1434 (10th Cir. 1990).

90.    The Defendants' actions and omissions were intentional, willful, wanton and in reckless disregard of the Plaintiffs' rights and entitle the Plaintiffs to an award of punitive damages in an amount to be determined by the finder of fact.

### Count III:  Violations of the New Mexico Whistleblower Protection Act
### (against Defendant Board of County Commissioners of Bernalillo County)

91.    Plaintiffs re-allege the foregoing paragraphs as though fully set forth herein.

92.    Defendant Board of County Commissioners of Bernalillo County is a "public employer" as that term is used in Section 2(C) of the New Mexico Whistleblower Protection Act (NMSA 1978, § 10-16C-2(C) (2010)).

93.    The Individual Plaintiffs are, or were, "public employee[s]" as that term is used in Section 2(B) of the Whistleblower Protection Act (NMSA 1978, § 10-16C-2(B) (2010)).

94.    As detailed above, the Individual Plaintiffs all communicated to the public employer and/or third parties regarding the "unlawful or improper act[s]" committed by Defendant and/or Defendant's agents.  (NMSA 1978, § 10-16C-2(E) (2010)).

95.    Alternatively, even were the acts about which the Individual Plaintiffs communicated not "unlawful or improper act[s]" that term is defined in the Whistleblower Protection Act, Plaintiffs had a good faith belief that the acts were "unlawful or improper."

96.    In response to Plaintiffs' whistleblowing activity, Defendant and/or its agents took "retaliatory action[s]" against the Individual Plaintiffs as that term is defined in the Whistleblower Protection Act (NMSA 1978, § 10-16C-2(D) (2010)).

17

EXHIBIT A

97.    As a direct and proximate result of Defendant's "retaliatory action[s]," Plaintiffs suffered damages in an amount to be proven at trial.

### Jury Demand

Plaintiffs demand a trial by jury on all counts for which a jury trial is permitted.

### Request for Relief

WHEREFORE, for the foregoing reasons, Plaintiffs pray for the following relief:

a)    Damages, including liquidated damages as set forth in NMSA 1978, § 10-16C-4(A) (2010), in an amount to be determined at trial;

b)    An order requiring Defendant to restore the status quo ante for Plaintiffs, prior to the relation described above;

c)    Payment of costs of suit herein;

d)    Attorneys' fees, as required by NMSA 1978, § 10-16C-4(A) (2010);

e)    Compensatory and Punitive damages for the violations of Plaintiffs' constitutional rights described above;

f)    An award of pre-judgment and post-judgment interest; and

g)    For other and further relief as the Court may deem just and proper.

Dated: December 17, 2018                    Respectfully submitted,

<div style="margin-left:40%">

**YOUTZ & VALDEZ, P.C.**
_/s/ Shane Youtz_
Shane C. Youtz
shane@youtzvaldez.com
Stephen Curtice
stephen@youtzvaldez.com
James A. Montalbano
james@youtzvaldez.com
900 Gold Avenue SW
Albuquerque, NM  87102
(505) 244-1200
_Attorneys for Plaintiffs_

</div>

18

EXHIBIT A