AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
NEW MEXICO COUNCIL 18, LOCAL 2499,
AFL-CIO, ERIC ALLEN, STEPHEN PERKINS,
PATRICK GARCIA, and ALEXIS CAVIS,

        Plaintiffs,

v.                                                CV 19-001 MV/LF

BOARD OF COUNTY COMMISSIONERS
FOR BERNALILLO COUNTY,
And RALPH PHILLIP GREER, GREGORY
RICHARDSON, ERIN THOMAS
aka ERIN RILEY, MANUEL GONZALES III,
RUSSELL BROYLES & JOHN DYKES
(all individuals in their individual capacities),

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiffs' Motion to Stay Arbitration Involving Eric Allen Pending Resolution of the Instant Litigation ("Plaintiffs' Motion to Stay") [Doc. 3], Defendants' Motion to Dismiss the Individual Defendants with Prejudice and to Dismiss the Union for Lack of Standing and Memorandum in Support Thereof ("Defendants' First Motion") [Doc. 7], and Individually Named Defendants' Motion to Dismiss Based on Qualified Immunity ("Defendants' Second Motion") [Doc. 35].   The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that Plaintiffs' Motion to stay is not well-taken and will be denied, Defendants' First Motion is well-taken in part and will be granted in part (although Plaintiffs will be given leave to amend), and Defendants' Second Motion is found as moot.

**BACKGROUND**

On December 17, 2018, Plaintiffs filed in New Mexico state court their Complaint for

Violations of First Amendment Free-Speech and Associational Rights Under 42 U.S.C. § 1983

and for Violations of the New Mexico Whistleblower Protection Act (the "Complaint") [Doc. 1-

2]. Plaintiffs Eric Allen, Stephen Perkins, Patrick Garcia, and Alexa Cavis (the "Individual

Plaintiffs") are current or former employees of Bernalillo County (the "County") who work or

formerly worked at the Metropolitan Detention Center ("MDC"). *Id.* The Individual

Plaintiffs are members of the American Federation of State, County and Municipal Employees,

New Mexico Council 18, Local 2499, AFL-CIO ("AFSCME Local 2499" or the "Union"). *Id.*

In the Complaint, the Individual Plaintiffs and the Union bring two claims pursuant to 42 U.S.C.

§ 1983, "Violations of Plaintiffs' First Amendment Right to Associate with the Union" (Count I)

and "Violations of Plaintiffs' First Amendment Right of Speech on Matters of Public Concern"

(Count II), against the following individuals: Ralph Fernandez (current Chief of MDC), Greg

Rees (Chief of MDC from August 7, 2017 to November 2, 2018), Tom Ruiz (interim Chief of

MDC from July 2016 to August 7, 2017), Phillip Greer (Chief of MDC from around January

2016 to October 2016), Gregory Richardson (Deputy Chief of Operations at MDC), and Erin

Thomas (Training Coordinator of MDC) (collectively, the "Individual MDC Defendants"); and

Manuel Gonzales III (Sheriff of Bernalillo County Sheriff's Office ("BCSO"), Russell Broyles

(Sergeant with BCSO), and John Dykes (Deputy Class with BCSO) (collectively, the "Individual

BCSO Defendants"). *Id.* Plaintiffs also bring one additional claim, "Violations of the New

Mexico Whistleblower Protection Act," (Count III) against the County. *Id.* In summary,

Plaintiffs "seek legal redress for Defendants' concerted and ongoing campaign against

employees who exercise their constitutional rights of free speech and association with a labor

organization, and who blow the whistle on unlawful or improper acts of the County." *Id.*

On January 2, 2019, the County removed the action to this Court. Doc. 1. Thereafter,

on January 3, 2019, Plaintiffs filed their Motion to Stay, requesting that this Court "stay a

pending and related arbitration pending the resolution of litigation filed herein, the facts of which

are inextricably intertwined with the current litigation." Doc. 3 at 1. Defendants oppose the

motion. On January 15, 2019, Defendants filed their First Motion, seeking dismissal of

Plaintiffs' § 1983 claims set forth in Counts I and II against the individual Defendants for failure

to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, and seeking dismissal of the Union as a Plaintiff in this action for lack of

standing.[1] Doc. 7. Plaintiffs oppose the motion. On June 21, 2019, Defendants filed their

Second Motion, again seeking dismissal of Plaintiffs' § 1983 claims set forth in Counts I and II

against the individual Defendants for failure to state a violation of clearly established

constitutional rights. Doc. 35. Plaintiffs oppose the motion.

**DISCUSSION**

I.      Plaintiffs' Motion to Stay

In their Motion to Stay, Plaintiffs argue that a "subset of the factual issues raised in this

litigation" are also relevant to an arbitration between the Union and the County involving

whether the County had just cause to terminate Plaintiff Allen for excessive use of force (the

---

[1] Defendants failed to seek Plaintiffs' position before filing either of their motions, choosing instead to assume that each motion was opposed. This failure was in violation of the Local Rules, which provide that "[m]ovant *must* determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M.LR-Civ 7.1(a) (emphasis added). Rule 7.1(a) applies regardless of the nature of the motion at issue. The parties are directed to comply with this rule going forward. Lack of compliance in connection with any further motions will result in summary denial.

"Arbitration"). Doc. 3 at 2. Plaintiffs asked the Arbitrator presiding over the Arbitration to stay the Arbitration pending resolution of the instant action; she denied that request. *Id.* at 4. Plaintiffs now ask this Court to stay the Arbitration "[i]n order to avoid duplicity of effort, litigation, and the risk of inconsistent rulings." *Id.*

As Defendants note, Plaintiffs provide no legal authority to support their request for a stay of the Arbitration. Nor has the Court's own research unearthed any such authority. Further, Plaintiffs' sole justification for their motion, namely that as a practical matter, staying the Arbitration would "reduce the parties' duplicity of effort, limit litigation, and reduce the risk of inconsistent rulings," is belied by the undisputed fact – explicitly acknowledged by Plaintiffs – that the parties are precluded by their collective bargaining agreement from arbitrating the claims set forth in the instant action. Doc. 18 at 3, Doc. 3 at 4. Indeed, Plaintiffs explicitly note that "[a]n employee's contractual rights under a collective bargaining agreement are distinct from the employee's statutory rights," and that the separate nature of these rights is not altered by the fact that they arise from the same set of facts. Doc. 3 at 5. As a result, as Plaintiffs again explicitly recognize, any adverse decision issued by the Arbitrator would not preclude Allen's "subsequent litigation of his federal statutory claims in a judicial forum." Doc. 18 at 3. As the Arbitrator found in declining to stay the Arbitration,

> there is no conflict between the § 1983 causes of action being decided in [] court and the issue of just cause being decided in arbitration. The § 1983 suit is for the enforcement of civil rights. The grievance is for the resolution of the grievant's dispute over his termination. While the two matters arise out of the same set of operational facts, the causes of action in both are wholly distinct.

Doc. 8-1.

Because this Court's resolution of the issues before it would have no effect on the Arbitrator's resolution of the issues before her, a stay of the Arbitration would neither reduce the

4

parties' duplicity of effort, nor limit litigation, nor reduce the risk of inconsistent rulings. There

thus is no practical justification for this Court to stay the Arbitration. Lacking either a practical

or a legal basis for staying the Arbitration, the Court will deny Plaintiffs' Motion to Stay.

II.      Defendants' First Motion

         A.      Sufficiency of Plaintiffs' Allegations in Counts I and II

                 1.      Standard

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon

which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion

tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v.

McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, the

Court must accept as true all well-pleaded factual allegations in the complaint, view those

allegations in the light most favorable to the non-moving party, and draw all reasonable

inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir.

2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to

dismiss. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible"). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (citation omitted).

> In keeping with these two principles, the Court explained,
>
> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

The Tenth Circuit has made clear that "context matters in notice pleading." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). Specifically, in Section 1983 cases, where, as here, "defendants often include the government agency and a number of government actors sued in their individual capacities," it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1249-50 (emphasis in original). Accordingly, a complaint that "fails to isolate the allegedly unconstitutional acts of each defendant . . . does not provide adequate notice

6

as to the nature of the claims against each," and is subject to dismissal. *Id.* at 1250.

Notably, "supervisor status by itself is insufficient to support liability." *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996). Rather, personal participation is an essential allegation in a § 1983 claim." *Id.* (citation omitted); *see also Pahls v. Thomas*, 718 F.3d 1210, 1231 (10th Cir. 2013) ("Liability under § 1983 . . . requires personal involvement."). Accordingly, in order to survive a motion to dismiss, a complaint must identify "the specific actions or policies for which each defendant is allegedly responsible." *Pahls*, 718 F.3d at 1232; *see also Dodd v. Richardson,* 614 F.3d 1185, 1195 (10th Cir. 2010) (holding that wardens and other supervisors can face § 1983 liability based on the "promulgation, creation, implementation, or utilization of a policy that caused a deprivation of plaintiff's rights").

### 2. The Instant Case

Defendants argue that Plaintiffs' allegations fail to meet their burden of providing fair notice of the grounds for their First Amendment claims as alleged in Counts I and II against each of the individual Defendants. Specifically, Defendants contend that, by "repeatedly speak[ing] in terms of 'Defendants' in the aggregate," the Complaint fails to allege what each individual Defendant did as to each Individual Plaintiff. Doc. 7 at 6. Plaintiffs disagree, arguing that Defendants ignore "the facts in the Complaint . . . where Plaintiffs allege specific employment decisions made by individual defendants (employment or criminal)." Doc. 17 at 7-8. As set forth herein, the Court agrees that the Complaint falls short of "mak[ing] clear exactly *who* is alleged to have done *what* to *whom,*" and accordingly, Plaintiffs have failed to meet their burden of providing fair notice of the grounds for their First Amendment claims against the individual Defendants. *Robbins*, 519 F.3d at 1250.

7

First, the Complaint alleges that Plaintiff Allen has been "a vocal supporter of the Union

and of the employees in the bargaining unit," a fact of which "Defendants (individual and the

County)" have been aware. *Id.* ¶ 28. In 2009, the County attempted to suspend and/or

terminate Allen's employment, but those attempts were overturned in arbitration. *Id.* ¶ 27. On

September 15, 2017, Allen "was given a notice of intent to terminate his employment," based on

two "use of force incident[s]" and communications he made criticizing MDC management for

"mismanagement" of the detention center and for adopting "an unsafe use of force policy" which

were made in his "capacity as an officer of AFSCME Local 2499 . . . to members of the

bargaining unit it represents." *Id.* ¶¶ 29-30. Although "investigations and initial reports" of

the two use of force incidents concluded that "none of the officers involved . . . use[d] excessive

force," in the case of Allen, "those determinations were reversed by management of MDC,

including one or more of the Individual MDC Defendants." *Id.* ¶ 32. Allen "was the only

employee disciplined for either incident." *Id.* ¶ 33. "The Individual MDC Defendants,

separately or in concert, referred the matter to the Sheriff's Department," and thereafter, "[t]he

Individual BCSO Defendants, separately or in concert, sought criminal prosecution." *Id.* ¶ 36;

*see also id.* ¶ 35 ("The Individual MDC Defendants, and the Individual BCSO Defendants,

separately or in concert, went so far as to cause criminal charges to be brought against Plaintiff

Eric Allen.").

Similarly, the Complaint alleges that Plaintiff Perkins "in his capacity as President of [the

Union], has been outspoken in his support for the union and his critique of MDC" and its

management. Doc. 1-2 at ¶ 39. Specifically, in "late 2017 or early 2018," Perkins presented a

request to the County "that MDC management be placed under the Sheriff's department due to

the mismanagement and lack of leadership at MDC," and in August 2018, was listed as a witness

to testify on behalf of Allen and the Union in the arbitration regarding Allen's termination.

Doc. 1-2 ¶¶ 40-41.  Perkins was indicted on November 16, 2018, and although "MDC

Management, including some of the Individual MDC Defendants, were provided a copy of the

indictment, . . . no employee of the County notified Plaintiff Perkins about the indictment."  *Id.*

¶ 43.  The indictment arose out of an incident during which "everything Plaintiff Perkins did . . .

was consistent with MDC Policy and his training."  *Id.* ¶ 48.  Nonetheless, "the Individual

BCSO Defendants caused a grand jury to indict Plaintiff Perkins for two fourth-degree felonies."

*Id.*  Further, "the Individual MDC defendants were aware of the notice of arraignment, but

failed to inform Plaintiff Perkins of the same."  *Id.* ¶ 51.  "Neither a target letter nor notice of

the arraignment were delivered by anyone from the County to Plaintiff Perkins's current

address," and "[a]s a result of the failure to notify Plaintiff Perkins of the arraignment, he did not

appear . . . and a warrant was issued for his arrest."  *Id.* ¶ 51.  "[I]ndividuals within the County

issued a press release" about the issuance of the warrant.  *Id.*  "The Individual MDC

Defendants, separately or in concert, referred the matter to the Sheriff's Department," and in

turn, "the Individual BCSO Defendants, separately or in concert, sought criminal prosecution" of

Perkins.  *Id.* ¶ 52.

Next, the Complaint alleges that, in August 2018, Plaintiff Garcia was listed as a witness

to testify on behalf of Allen and the Union in the arbitration regarding Allen's termination.  *Id.* ¶

55.  When Garcia notified Defendant Richardson on September 10, 2018 that he planned to

testify at the arbitration, Richardson "called over counsel for the County, George Heidke, who

told Plaintiff Garcia that he did not have to testify if he did not want to."  *Id.* ¶ 56.  On or about

September 14, 2018, Richardson called Garcia into his office, questioned him about his

testimony regarding a use of force incident that had occurred three years earlier, and said that he

was "hoping to continue using Plaintiff Garcia as a Defensive Tactics Instructor, but that he wanted to meet with him 'to see where you're at.'" *Id.* ¶¶ 57-58. On September 18, 2018, Defendant Thomas told Garcia that "they did not need him as a Defensive Tactics instructor, and that effective September 21, 2018, she would not be using him for the training program." *Id.* ¶ 59. On September 24, 2018, Garcia testified at the arbitration regarding Allen's termination. *Id.* ¶ 62. In December 2018, "Plaintiff Garcia received discipline in the form of a verbal warning for an incident that occurred nearly a year prior . . . He also received three additional notices of investigation for other potential disciplinary matters." *Id.* ¶ 62. "[T]he Individual MDC Defendants, separately or in concert, retaliated against Plaintiff Garcia." *Id.* ¶ 65.

Finally, the Complaint alleges that Cavis was elected to an officer position with the Union in April 2017. *Id.* ¶ 67. On April 25, 2016, Cavis "was asked to participate in an investigatory interview regarding a statement she had previously given regarding a use of force incident." *Id.* ¶ 68. She requested a "Union representative," which request was denied by "the County." *Id.* ¶ 69. As a result of that denial, on December 6, 2016, the Union filed a Prohibited Practices Complaint ("Cavis Complaint") with the Bernalillo County Labor-Management Relations Board (the "Board"). On April 13, 2018, Cavis "was placed on administrative leave and provided a notice of intent to discipline her for three use of force incidents." *Id.* ¶ 73. On July 23, 2018, a hearing was held on the Cavis Complaint, at the conclusion of which the Board found that "the County had violated the Labor Management Relations Ordinance." *Id.* On August 10, 2018, "the County (through Defendant Fernandez) terminated the employment of Plaintiff Cavis." *Id.* ¶ 74. "Individual MDC Defendants, separately or in concert, terminated Plaintiff Cavis's employment." *Id.* ¶ 76.

None of these paragraphs setting forth the allegedly adverse employment actions taken against each Individual Plaintiff "make[s] clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual [Defendant] with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the [County]."    *Robbins*, 519 F.3d at 1249-50 (emphasis in original).    First, the allegations regarding Plaintiff Allen do not make clear which of the individual Defendants were aware of Allen's support of the Union, which, if any, of the individual Defendants attempted to suspend and/or terminate him, who gave him a notice of intent to terminate his employment (and whether such individual is even a named Defendant here), which of the Individual MDC Defendants reversed the determinations that Allen had not used excessive force during the two incidents for which he was investigated, which of the Individual MDC Defendants referred the matter to BCSO and/ or "caused" criminal charges to be brought against Allen, which of the Individual BCSO Defendants sought criminal prosecution of and/or caused criminal charges to be brought against Allen, by what specific actions any of the Individual MDC Defendants "caused" criminal charges to be brought against Allen, or by what specific actions any of the Individual BCSO Defendants "sought criminal prosecution" of and/or "caused criminal charges" to be brought against Allen.    Further, the allegations regarding Plaintiff Perkins do not make clear which, if any, of the individual Defendants were aware of Perkins's support of the Union, his criticism of MDC management, or his intent to testify on behalf of the Union during Allen's arbitration, which of the Individual MDC Defendants were provided a copy of the indictment against Perkins and/or the notice of his arraignment but failed to deliver to or notify Perkins of the indictment or the arraignment notice, who issued the press release about the arrest warrant (and whether such individual is even a named Defendant here), which of the Individual MDC Defendants referred the matter to BCSO,

11

which of the Individual BCSO Defendants "caused a grand jury to indict" or "sought criminal prosecution" of Perkins, by what specific actions any of the Individual MDC Defendants "referred" the matter to BCSO, or by what specific actions any of the Individual BCSO Defendants "caused a grand jury to indict" or "sought criminal prosecution" of Perkins. And while the allegations regarding Plaintiff Garcia indicate that Defendant Richardson discussed with Garcia his position as a Defensive Tactics instructor and that Defendant Thomas informed Garcia that he was no longer going to be used for the MDC training program, the allegations do not make clear whether either Richardson or Thomas was responsible for the decision to change Garcia's position. Nor do the allegations make clear which, if any, of the remaining individual Defendants were aware of Garcia's support of the Union and/or his intent to testify at the Allen arbitration, who gave Garcia the discipline he "received . . . in the form of a verbal warning" and the "three additional notices of investigation for other potential disciplinary matters" (and whether such individual is even a named Defendant here), or which of the Individual MDC Defendants "separately or in concert" retaliated against Garcia. Similarly, while the allegations regarding Plaintiff Cavis indicate that "the County (through Defendant Fernandez)" terminated her employment, the allegations do not identify any specific action taken by Fernandez. Nor do they make clear who placed Cavis on administrative leave and provided her with a notice of intent of discipline (and whether such individual is even a named Defendant here), or which of the Individual MDC Defendants (other than Fernandez) "separately or in concert" terminated Cavis's employment.

In short, in recounting the retaliatory actions allegedly taken against the Individual Plaintiffs, the Complaint repeatedly uses the passive voice and attributes actions to unidentified individuals acting "separately or in concert." The law is clear, however, that "[s]tate actors may

12

only be held liable under § 1983 for their own acts, not the acts of third parties." *Robbins*, 519 F.3d at 1251. Plaintiffs' failure to identify which individual Defendant (if any) engaged in which alleged act as to which Individual Plaintiff thus renders insufficient Plaintiffs' First Amendment claims against the individual Defendants.

Admittedly, elsewhere in the Complaint in a section entitled "General Factual Allegations," Plaintiffs note the time periods during which each of the Individual MDC Defendants allegedly served as Chief of MDC, and allege that "Defendants Fernandez, Rees, Ruiz and Greer are responsible for, and involved in, disciplinary decisions on behalf of the MDC." *Id.* ¶ 12. Even read together, however, these provisions do not save the Complaint, as they are too vague "for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed" against which, if any, Plaintiff. *Robbins*, 519 F.3d at 1250. As noted above, supervisory status is insufficient to support liability; instead, an individual with supervisory status – such as Chief of MDC – must have personally participated in the constitutional violation alleged, either by taking some specific action or by implementing a specific policy. Here, the general allegations that each of the Individual MDC Defendants was, at some point, the Chief of MDC and was either "responsible" for or "involved" in some unidentified way in unidentified "disciplinary decisions" fall short of "isolat[ing] the allegedly unconstitutional acts of each defendant" taken in relation to each Plaintiff. *Robbins*, 519 F.3d at 1250.

The paragraphs in the Complaint regarding the Individual BCSO Defendants suffer from the same defects. Specifically, in the General Factual Allegations section, the Complaint alleges that Defendant Gonzales is the current Sheriff of BCSO and "oversees employees who investigate alleged crimes and recommend charges be brought," that Defendant Broyles is a

Sergeant with BCSO and "was responsible for investigating and recommending charges be brought against Plaintiff Eric Allen," and that Defendant Dykes is a Deputy Class with the BCSO, and "was responsible for investigating and recommending charges be brought against Plaintiff Stephen Perkins." Doc. 1-2 ¶¶ 16-18. As noted above, supervisory status is insufficient to support liability; instead, an individual with supervisory status – such as Sheriff of BCSO – must have personally participated in the constitutional violation alleged, either by taking some specific action or by implementing a specific policy. Here, the general allegations that Gonzales is the Sheriff of BCSO and "oversees employees" who investigate unidentified crimes and recommend unidentified charges fall short of "isolat[ing] the allegedly unconstitutional acts" taken by Gonzales in relation to any Plaintiff. *Robbins*, 519 F.3d at 1250. Further, allegations that Broyles and Dykes were "responsible for investigating and recommending charges" against Plaintiffs Allen and Perkins, respectively, are too vague for either Broyles or Dykes "to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250.

Because Plaintiffs' First Amendment claims thus fail to satisfy the standard of fair notice required by Rule 8, they are subject to dismissal under Rule 12(b)(6). *Id.*; *see also* W*hite v. Braley*, 172 F.3d 880, No. 98-6361, at *2 (10th Cir. 1999) (plaintiff's failure to allege that named defendant was personally responsible for action alleged to have violated due process rights was fatal to plaintiff's Section 1983 claim). The Court, however, "has authority to dismiss the [claims] with or without leave to amend the complaint." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994). Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be freely given 'when justice so requires." Fed. R. Civ. P. 15(a)(2). "Ideally, if it is at all possible that the party against whom the dismissal is directed can correct

the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brever*, 40 F.3d at 1131 (citation omitted). The Court will exercise its discretion to dismiss Counts I and II of the Complaint with leave to file an amended complaint to correct the pleading deficiencies identified herein. If Plaintiffs decline to timely file an amended complaint or file an amended complaint that similarly fails to state a claim, the Court may dismiss Counts I and II, with prejudice, without further notice.

B.      Sufficiency of Plaintiffs' Allegations to Establish the Union's Standing

Defendants argue that the Complaint is devoid of allegations describing "what if any injury the Union has suffered," and that as a result, the Complaint "utterly fails to establish that the Union has any standing to sue herein." Doc. 7 at 7. "Article III of the Constitution limits the federal judicial power to 'Cases' or 'Controversies,' thereby entailing as an 'irreducible minimum' that there be (1) an injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *United Food & Comm. Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996) (citations omitted). An organization has associational standing if "(1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017) (quoting *United Food*, 517 U.S. at 552). The first two prongs of this test are "grounded on Article III as an element of the constitutional requirement of a case or controversy." *United Food*, 545-55. The third prong, however, is prudential rather than constitutional, and "is best seen as focusing on [] matters of administrative convenience and efficiency." *Id.* at 557.

Here, it is undisputed that the Individual Plaintiffs, all members of the Union, have standing.   Further, the interests the Union seeks to protect, namely, the rights of its members to be free from retaliation under both the First Amendment and the New Mexico Whistleblower Protection Act, are germane to its purpose as "the exclusive bargaining agent for the members of its bargaining unit" responsible for "represent[ing] their employment interests."   Doc. 17 at 9-10.   Finally, "where, as here, the organization seeking standing is joined in suit with its members who have Article III standing, . . . the prudential requirement for associational standing is made simple."   *Milwaukee Police Ass'n*, 863 F.3d at 640.   The Court "need not weigh whether the relief requested requires the participation of individual members, because the individual members are joined and standing has been met."   *Id.*   Accordingly, all three prongs of the associational standing test are met.   Having thus resolved the associational standing question, the Court need not address whether the Union also has standing because it suffered direct injury.   *United Food*, 517 U.S. at 551 n. 4.

III.   Defendants' Second Motion

In their Second Motion, Defendants argue that because "there are no well pled factual allegations that [the individual Defendants] personally violated the Plaintiffs' constitutional rights," the individual Defendants "are entitled to qualified immunity."   Doc. 35 at 8. Essentially, Defendants' arguments are the same as those set forth in the First Motion, namely that the allegations in Counts I and II are insufficient to state a constitutional violation committed by each individual Defendant.   Further, the relief requested by Defendants in their Second Motion is the same as that requested in their First Motion, namely, dismissal of Counts I and II pursuant to Rule 12(b)(6).   As discussed above, the Court has determined that Plaintiff's First Amendment claims fail to satisfy the standard of fair notice required by Rule 8, and thus are

subject to dismissal under Rule 12(b)(6).    Because the Court is dismissing Counts I and II

pursuant to Defendants' First Motion, Defendants' Second Motion is found as moot.

## CONCLUSION

Plaintiffs have provided no legal or factual basis for this Court to stay the Arbitration, and

accordingly, Plaintiffs' Motion to Stay is denied.    Plaintiffs' First Amendment claims, set forth

in Counts I and II of the Complaint, fail to satisfy the standard of fair notice required by Rule 8,

and thus are dismissed under Rule 12(b)(6).    The Court exercises its discretion to dismiss those

claims with leave to file an amended complaint.    The Union has associational standing and thus

dismissal of the Union is not warranted.    Because the Court dismisses Counts I and II pursuant

to Defendants' First Motion, Defendants' Second Motion to dismiss those same counts is found

as moot.

**IT IS THEREFORE ORDERED** that:

(1)    Plaintiffs' Motion to Stay Arbitration Involving Eric Allen Pending Resolution of

the Instant Litigation [Doc. 3] is **DENIED**;

(2)    Defendants' Motion to Dismiss the Individual Defendants with Prejudice and to

Dismiss the Union for Lack of Standing and Memorandum in Support Thereof [Doc. 7] is

**GRANTED IN PART**, as follows:

(a)    Counts I and II of the Complaint [Doc. 1-2] are dismissed without

prejudice to Plaintiffs' right to amend; and

(b)    Plaintiffs are granted leave to file an amended complaint within sixty (60)

days of entry of this Memorandum Opinion and Order; and

(3)    Individually Named Defendants' Motion to Dismiss Based on Qualified

Immunity ("Defendants' Second Motion") [Doc. 35] is **FOUND AS MOOT**.

DATED this 28th day of February, 2020.

_____
MARTHA VÁZQUEZ
United States District Judge