**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
NEW MEXICO COUNCIL 18, LOCAL 2499,
AFL-CIO, ERIC ALLEN, STEPHEN PERKINS,
PATRICK GARCIA, and ALEXIS CAVIS,

        Plaintiffs,

v.                                    CV 19-001 MV/LF

BOARD OF COUNTY COMMISSIONERS
FOR BERNALILLO COUNTY,
And RALPH PHILLIP GREER, GREGORY
RICHARDSON, ERIN THOMAS
aka ERIN RILEY, MANUEL GONZALES III,
RUSSELL BROYLES & JOHN DYKES
(all individuals in their individual capacities),

        Defendants.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court on Defendants' Motion to Dismiss the First

Amended Complaint for Failure to State a Claim and for Qualified Immunity ("Defendants'

Third Motion") [Doc. 46].    The Court, having considered the Motion, briefs, and relevant law,

and being otherwise fully informed, finds that Defendants' Third Motion is not well-taken and

will be denied.

## BACKGROUND

      Plaintiffs Eric Allen, Stephen Perkins, Patrick Garcia, and Alexa Cavis (the "Individual

Plaintiffs") are current or former employees of Bernalillo County (the "County") who work or

formerly worked at the Metropolitan Detention Center ("MDC").    Doc. 44.    The Individual

1

Plaintiffs are members of the American Federation of State, County and Municipal Employees, New Mexico Council 18, Local 2499, AFL-CIO ("AFSCME Local 2499" or the "Union").   *Id.*

On December 17, 2018, the Individual Plaintiffs and the Union filed in New Mexico state court their original Complaint for Violations of First Amendment Free-Speech and Associational Rights Under 42 U.S.C. § 1983 and for Violations of the New Mexico Whistleblower Protection Act (the "Complaint") [Doc. 1-2].   On January 2, 2019, the County removed the action to this Court.   Doc. 1.   Thereafter, on January 15, 2019, Defendants filed a Motion to Dismiss the Individual Defendants with Prejudice and to Dismiss the Union for Lack of Standing and Memorandum in Support Thereof ("Defendants' First Motion") [Doc. 7], seeking dismissal of Plaintiffs' § 1983 claims set forth in Counts I and II against the individual Defendants for failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and seeking dismissal of the Union as a Plaintiff in this action for lack of standing.   On June 21, 2019, Defendants filed "Individually Named Defendants' Motion to Dismiss Based on Qualified Immunity" ("Defendant's Second Motion") [Doc. 35], again seeking dismissal of Plaintiffs' § 1983 claims set forth in Counts I and II against the individual Defendants for failure to state a violation of clearly established constitutional rights.   Plaintiffs opposed both motions.

In a Memorandum Opinion and Order entered on February 28, 2020 ("February 2020 Opinion") [Doc. 43], the Court granted Defendants' First Motion, dismissing Counts I and II of the Complaint without prejudice to Plaintiffs' right to amend, and gave Plaintiffs the opportunity to file an amended complaint within 60 days of entry of the February Opinion.   In light if its dismissal of Counts I and II pursuant to Defendant's First Motion, the Court found as moot Defendants' Second Motion.

In accordance with the Court's directive, on April 2, 2020, Plaintiffs filed their First Amended Complaint for Violations of First Amendment Free-Speech and Associational Rights Under 42 U.S.C. § 1983 and for Violations of the New Mexico Whistleblower Act ("FAC"). Doc. 44.   In the FAC, the Individual Plaintiffs and the Union bring two claims pursuant to 42 U.S.C. § 1983, "Violations of Plaintiffs' First Amendment Right to Associate with the Union" (Count I) and "Violations of Plaintiffs' First Amendment Right of Speech on Matters of Public Concern" (Count II), against the following individuals:   Ralph Fernandez (current Chief of MDC, formerly Assistant Chief of Security), Greg Rees (Chief of MDC from August 7, 2017 to November 2, 2018), Gregory Richardson (Deputy Chief of Operations at MDC), and Erin Thomas (Training Coordinator of MDC) (collectively, the "Individual MDC Defendants"). Plaintiffs also bring one additional claim, "Violations of the New Mexico Whistleblower Protection Act," (Count III) against the County.   *Id.*   In summary, Plaintiffs "seek legal redress for Defendants' concerted and ongoing campaign against employees who exercise their constitutional rights of free speech and association with a labor organization, and who blow the whistle on unlawful or improper acts of the County."   *Id.*

On April 13, 2020, Defendants filed their Third Motion, seeking dismissal of all counts for failure to state a claim under Rule 12(b)(6), and seeking dismissal of Counts I and II on the additional basis of qualified immunity.   Doc. 46.   Plaintiffs oppose the Third Motion in its entirety.   Doc. 49.

## STANDARD

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint."   *Mobley v.*

*McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).   When considering a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.   *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.*   "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"   *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

The Court in *Iqbal* identified "two working principles" in the context of a motion to dismiss.   *Id.*   First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.*   Accordingly, Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.   "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."   *Id.* at 679; *see Twombly*, 550 U.S. at 570 (holding that a plaintiff must "nudge" her claims "across the line from conceivable to plausible").   Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to

4

relief."   *Id.* (citation omitted).

In keeping with these two principles, the Court explained,

a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Id.* at 679.

The Tenth Circuit has made clear that "context matters in notice pleading." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).   Specifically, in Section 1983 cases, where, as here, "defendants often include the government agency and a number of government actors sued in their individual capacities," it is "particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1249-50 (emphasis in original).   Accordingly, a complaint that "fails to isolate the allegedly unconstitutional acts of each defendant . . . does not provide adequate notice as to the nature of the claims against each," and is subject to dismissal.   *Id.* at 1250.

In the instant case, the Individual MDC Defendants move to dismiss Counts I and II not only for failure to state a claim but also on the basis of qualified immunity.   Qualified immunity protects government officials performing discretionary functions "when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).   The Court employs a two-part test to analyze a qualified immunity defense.   *Id.*   Accordingly, "[i]n resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue

5

was clearly established at the time of defendant's alleged misconduct." *Id.* The Court has "the freedom to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

"A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that his [or her] actions violate that right." *Lundstrom*, 616 F.3d at 1118-19 (citation omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Fisher v. City of Las Cruces*, 584 F.3d 888, 900 (10th Cir. 2009) (citation omitted). Accordingly, a "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Lundstrom*, 616 F.3d at 1119. Specifically, a "plaintiff must show legal authority making it apparent that in light of pre-existing law a reasonable official would have known that the conduct in question violated the constitutional right at issue." *Id.*

This does not mean that the plaintiff must "present a case with an identical factual situation." *Id.* To the contrary, the Supreme Court has made clear that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The "salient question" thus is whether the state of the law at the time of the alleged misconduct gave the defendant "fair warning" that his or her alleged misconduct was unconstitutional. *Id.* To answer this question in the affirmative, ordinarily, there must be "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff

6

maintains." *Brown*, 662 F.3d at 1164 (citation omitted).   In response to a motion to dismiss, the plaintiff has the burden "of articulating such clearly-established law."   *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006).

## DISCUSSION

The FAC contains three counts.   In Count I, Plaintiffs claim that the Individual MDC Defendants retaliated against them for exercising their First Amendment right to associate with the Union, in violation of the First Amendment.   In Count II, Plaintiffs claim that the Individual MDC Defendants retaliated against them for exercising their First Amendment right to speak on matters of public concern, in violation of the First Amendment.   In Count III, Plaintiffs claim that the County took retaliatory action against them for their communications regarding unlawful or improper acts by the County, in violation of the New Mexico Whistleblowers Protection Act ("WPA").   On their instant motion, Defendants seek dismissal of all three of these counts.

I.     First Amendment Retaliation Claims

A.     Sufficiency of the Allegations

Defendants first contend that the FAC suffers from the same flaw as did the Original Complaint, namely, that it fails to "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual [Defendant] with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the [County]."   *Robbins*, 519 F.3d at 1249-50 (emphasis in original).   Specifically, Defendants contend that "the FAC does not contain sufficient allegations regarding any specific acts taken by any of the individually named Defendants to state a claim regarding each of these Plaintiffs."   Doc. 46 at 2. As set forth herein, the Court disagrees and finds that, with the FAC, each of the Individual

Plaintiffs has now met his or her burden of providing fair notice of the grounds for their claims that certain of the Individual MDC Defendants retaliated against him or her.

First, as to Allen, the Complaint alleges that he has been "a vocal supporter of the Union and of the employees in the bargaining unit," a fact of which "Defendants (individual and the County)" have been aware.   Doc. 44 ¶ 22.   In the Original Complaint, there were no further allegations making clear which of the Individual MDC Defendants were aware of Allen's support of the Union.   The FAC now specifies that "Defendants Fernandez and Rees were well aware of Eric Allen's communications and actions on behalf of the Union."   *Id.*

The FAC further states that, on September 15, 2017, Allen "was given a notice of intent to terminate his employment," based on two "use of force incident[s]" and communications he made criticizing MDC management for "mismanagement" of the detention center and for adopting "an unsafe use of force policy" which were made in his "capacity as an officer of AFSCME Local 2499 . . . to members of the bargaining unit it represents."   *Id.* ¶¶ 23-24. Although "investigations and initial reports" of the two use of force incidents concluded that "none of the officers involved . . . use[d] excessive force," in the case of Allen, "those determinations were reversed by management of MDC, including one or more of the Individual MDC Defendants."   *Id.* ¶ 26.   Allen "was the only employee disciplined for either incident," and the discipline was taken "in retaliation for Eric Allen's communications and actions on behalf of the Union."   *Id.* ¶ 27.

The original Complaint failed to indicate which, if any, of the Individual MDC Defendants attempted to suspend and/or terminate Allen, who gave him a notice of intent to terminate his employment, or which of the Individual MDC Defendants reversed the determinations that Allen had not used excessive force during the two incidents for which he was

8

investigated.    In contrast, the FAC specifies that "Defendant Fernandez prepared and signed the

Notice of Contemplated Action proposing terminating Eric Allen's employment," and that

"Defendant Rees prepared and signed the Notice of Final Action terminating his employment."

*Id.* ¶ 26.    And while the original Complaint stated generally that "[t]he Individual MDC

Defendants, separately or in concert, referred the matter to the Sheriff's Department," *see* Doc.

1-1 ¶ 35-36, the FAC specifies that it was Defendants Rees and Fernandez who "cause[d]

criminal charges to be brought against Plaintiff Eric Allen, by "referr[ing] the matter to the

Sheriff's Department in retaliation for Plaintiff Allen's advocacy on behalf of the Union and his

association with the Union."    Doc. 44 ¶ 29-30.

Next, as to Perkins, the Complaint alleges that "in his capacity as President of [the

Union], [Perkins] has been outspoken in his support for the union and his critique of MDC" and

its management, and "has been quoted in multiple newspaper articles regarding the same."    *Id.*

at ¶ 33-34.    Specifically, in "late 2017 or early 2018," Perkins, on behalf of the Union, presented

a request to the County "that MDC management be placed under the Sheriff's department due to

the mismanagement and lack of leadership at MDC," and in August 2018, was listed as a witness

to testify on behalf of Allen and the Union in the arbitration challenging Allen's termination

"regarding the role of Union communiques to its membership."    *Id.* ¶¶ 34-35.    In the original

Complaint, there were no further allegations making clear which of the individual Defendants

were aware of Perkins's role in and/or communications on behalf of the Union.    The FAC now

specifies that "Defendants Fernandez and Rees were well aware of Stephen Perkins'

communications and actions on behalf of the Union."    *Id.* ¶ 36.

The FAC further alleges that, after a January 15, 2018 incident during which Perkins

rebooked an inmate who was scheduled to be released, "Defendants Rees and Fernandez referred

the matter for criminal prosecution . . . in retaliation for Plaintiff Perkins' active advocacy on behalf of the Union and his association with the Union." *Id.* ¶¶ 39-43, 47.   This referral led to a grand jury indicting Perkins "for two fourth-degree felonies," despite the fact that "everything [he] did [during the incident] was consistent with MDC Policy and training." *Id.*   In addition, Defendants Rees and Fernandez failed to provide Perkins "any notice of administrative investigation" regarding the incident, and, although having received a copy of the indictment on or about November 16, 2018, and having received notice of the arraignment, never notified Perkins about either the indictment or the arraignment, but instead "were involved in "issu[ing] a press release about that fact." *Id.* ¶¶ 38, 46.   A warrant was issued for Perkins's arrest, as he had no notice of the arraignment and thus failed to appear. *Id.* ¶ 46.   Unlike the original Complaint, the FAC thus clarifies that, of the Individual MDC Defendants, it was Defendants Rees and Fernandez who were provided a copy of the indictment against Perkins and the notice of his arraignment but failed to deliver to or notify Perkins of the indictment or the arraignment notice, participated in issuing the press release about the arrest warrant, and referred the matter for criminal prosecution.

Third, as to Garcia, the FAC alleges that, in August 2018, he was listed as a witness to testify on behalf of Allen and the Union in the arbitration challenging Allen's termination. *Id.* ¶ 50.   In the original Complaint, there were no further allegations making clear which of the individual Defendants were aware of Garcia's role in and/or communications on behalf of the Union.   The FAC now specifies that "Defendants Fernandez, Rees, Richardson, and Thomas were all well aware of Plaintiff Garcia's membership in the [Union], and his willingness to testify in the Eric Allen arbitration." *Id.* ¶ 51.

The FAC further specifies that on September 10, 2018, Garcia notified Richardson that

he planned to testify at the Allen arbitration, and that, during the conversation, Richardson "called over counsel for the County, George Heidke, who told Plaintiff Garcia that he did not have to testify if he did not want to." *Id.* ¶ 52. Garcia made clear to Richardson that "he could not say that Eric Allen was in the wrong or had used excessive force." *Id.* On September 14, 2018, Richardson called Garcia into his office, questioned him about his testimony regarding a use of force incident that had occurred three years earlier, and said that he was "hoping to continue using Plaintiff Garcia as a Defensive Tactics Instructor, but that he wanted to meet with him 'to see where you're at.'" *Id.* ¶¶ 53-54. Thereafter, on September 18, 2018, Thomas, in her role as Training Coordinator for MDC, told Garcia that "they did not need him as a Defensive Tactics instructor, and that effective September 21, 2018, she would not be using him for the training program." *Id.* ¶ 55. Thomas further informed Garcia that "he was needed to provide supervision to the Psychiatric Acute Care day shift, despite the fact that that is the smallest unit in the facility," and other areas had "a greater need for supervision." *Id.* ¶ 56. According to the FAC, Thomas and Richardson removed Plaintiff from his position as Defensive Tactics Instructor "in retaliation for his protected activities of associating with the Union and [willingness] to testify [at the] Allen arbitration hearing." *Id.* ¶ 58. As a result of the change in his position, Garcia "lost tangible employment benefits and [] suffered a loss of reputation that will negatively impact his career." *Id.* ¶ 57. These allegations, taken together, are sufficient to give rise to the reasonable inference that Defendants Richardson and Thomas each played a role in the decision to remove Garcia from his position as Defensive Tactics Instructor.

The FAC continues to allege that, on September 24, 2018, Garcia testified at the arbitration regarding Allen's termination, and spoke about his interactions with Thomas and Richardson earlier that month. *Id.* ¶ 59. Thereafter, in November 2018, "Garcia received

11

discipline in the form of a verbal warning for an incident that occurred nearly a year prior," which "verbal warning was directed by Defendants Fernandez and/or Rees." *Id.* ¶ 60. "He also received three additional notices of investigation for other potential disciplinary matters," which "notices were sent by Defendants Fernandez, Richardson, and Rees." *Id.*   According to the FAC, this discipline was "pretextual, and done by Defendants Fernandez, Richardson, and Rees to retaliate against Plaintiff Garcia for his actions and testimony." *Id.* ¶ 61.   In contrast to the original Complaint, which alleged only that the Individual MDC Defendants "separately or in concert" retaliated against Garcia, the FAC thus clarifies that Richardson, Fernandez, and Rees were each personally involved in these specific additional, allegedly retaliatory actions taken against Garcia.

Finally, as to Plaintiff Cavis, the Complaint alleges that on April 25, 2016, Cavis "was asked to participate in an investigatory interview regarding a statement she had previously given regarding a use of force incident." *Id.* ¶ 66.   She requested a "Union representative, as is her right," which request was denied by "the County." *Id.* ¶¶ 66-67.   As a result of that denial, on December 6, 2016, the Union filed a Prohibited Practices Complaint with the Bernalillo County Labor-Management Relations Board (the "Board"). *Id.* ¶ 68.   Thereafter, in April 2017, Cavis was elected to an officer (Trustee) position with the Union. *Id.* ¶ 64.   The FAC specifies that "Defendants Rees and Fernandez were [both] well aware of Cavis' affiliation with the Union." *Id.* ¶ 65.   On April 13, 2018, Cavis "was placed on administrative leave by Defendants Rees and Fernandez and provided a notice of intent to discipline her for three use of force incidents." *Id.* ¶ 71.   On July 23, 2018, a hearing was held on the Prohibited Practices Complaint, at the conclusion of which the Board found that "the County had violated the Labor Management Relations Ordinance." *Id.* ¶ 70.   On August 10, 2018, "the County (through Defendant

Fernandez) terminated the employment of Plaintiff Cavis." *Id.* ¶ 72.   According to the FAC, "Defendants Rees and Fernandez terminated Plaintiff Cavis' employment in retaliation" for her communications through the Prohibited Practices Complaint and her association with the Union. *Id.* ¶ 73.   The FAC thus specifies that, of the Individual MDC Defendants, it was Fernandez and Rees who were responsible for placing Cavis on administrative leave and Fernandez who was responsible for her termination.

Defendants contend that these allegations fail to meet the standard of fair notice required by Rule 8 because they are too conclusory, are implausible, and are insufficient to connect the Individual MDC Defendants to any anti-union animus.   Doc. 46 at 3-7.   The Court cannot agree.   First, as detailed above, the FAC has cured most of the deficiencies identified by the Court in its February 2020 Opinion, and by doing so, has sufficiently made clear who is alleged to have done what to whom, thus providing each Individual MDC Defendant with fair notice as to the basis of the claims alleged against him or her.   *See Robbins*, 519 F.3d at 1249-50. Admittedly, in the February 2020 Opinion, the Court questioned the sufficiency of allegations in the original Complaint regarding the Individual MDC Defendants' actions in connection with the criminal charges brought against Allen and Perkins and regarding Richardson's and Thomas's actions in connection with the change in Garcia's position.   *See* Doc. 43 at 11-12.   After further reflection and careful review of the FAC, however, the Court finds that the allegations that Fernandez and Rees "referred for criminal prosecution" both Allen and Perkins sufficiently state specific actions taken by Fernandez and Rees that give rise to a reasonable inference of unlawful retaliation.   Similarly, the Court finds that the allegations detailing Richardson's and Thomas's interactions with Garcia are sufficiently detailed to give rise to the reasonable inference that each played a role in the (allegedly retaliatory) decision to change Garcia's position.

Next, whether it is "plausible" that the Individual MDC Defendants acted as alleged in the FAC is not the relevant inquiry; whether the evidence bears out the allegations (including allegations that the Individual MDC Defendants who are alleged to have taken retaliatory actions as a result of Individual Plaintiffs' speech had knowledge of that speech in the first instance) remains a question for another day.   Instead, at the motion to dismiss stage, "plausibility" is met where the factual content of the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678.   The Court finds that this standard is met here, as the factual allegations are now sufficiently detailed to allow the Court to draw the reasonable inference that Fernandez, Rees, Richardson, and Thomas each took the specific actions attributed to them in the FAC in retaliation for the Individual Plaintiffs' association with and communications on behalf of the Union.

Finally, the Court did not find before, and does not find now, that the Complaint lacks plausibility because it does not allege anti-union animus on the part of each Individual MDC Defendant.   Those Defendants are alleged to be part of management at MDC and management at MDC is alleged to have harbored anti-union animus.   Taken together, these allegations are sufficient to give rise to the reasonable inference that the Individual MDC Defendants' actions were taken in retaliation for the Individual Plaintiffs' association with and communication on behalf of the Union.

      B.    <u>Elements of the Claims</u>

Plaintiffs allege that certain of the Individual MDC Defendants retaliated against certain of the Individual Plaintiffs for exercising their freedom of speech (Count II) and their freedom of association (Count I).   Defendants contend that the FAC fails to state essential elements of each of these retaliation claims, warranting their dismissal.

14

To analyze Plaintiffs' freedom of speech retaliation claim, the Court engages in a five-step inquiry known as the "*Garcetti/Pickering*" analysis.   *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th Cir. 2007).   "First, the court must determine whether the employee speaks pursuant to [his] official duties." *Id.* (citations omitted).   If the court determines that "the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself commissions or created." *Id.* (citation omitted). "Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern." *Id.*   If the answer to this question is no, "then the speech is unprotected and the inquiry ends." *Id.*   "Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer." *Id.* (citation omitted).   Fourth, if the employee's interest outweighs that of the employer, "the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision." *Id.* (citation omitted). Fifth, "if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech." *Id.* (citation omitted).   "Implicit within this five-prong test is a requirement that the public employer have taken some adverse employment action against the employee." *Couch v. Bd. of Trustees of Mem. Hosp. of Carbon Cty.*, 587 F.3d 1223, 1236 (10th Cir. 2009) (citation omitted).

The Court's analysis of Plaintiffs' freedom of association retaliation claim involves fewer steps.   Specifically, because that claim is based on allegations that the Individual MDC

Defendants retaliated against them for participation in the Union and/or for engaging in acts protected by the collective bargaining agreement between MDC and the Union, the Court need not engage in the first three steps of the *Garcetti/Pickering* test.   *See Shrum v. City of Coweta, Okla.*, 449 F.3d 1132, 1139 (10th Cir. 2006).   Accordingly, in the context of Plaintiffs' freedom of association retaliation claim, the Court considers whether the Individual Plaintiffs' association with the Union "was a substantial factor or a motivating factor in a detrimental employment decision," and if so, whether Defendants can demonstrate that they "would have taken the same action against the employee even in the absence of the protected speech."   *Brammer-Hoelter*, 492 F.3d at 1202 (citation omitted).   And, as with Plaintiffs' freedom of speech retaliation claim, the Court also considers the implicit issue of whether "the public employer ha[s] taken some adverse employment action against the employee."   *Couch*, 587 F.3d at 1236 (citation omitted).

Here, Defendants argue (without further explanation or application of the relevant authority to the facts of this case) that the first and second prongs of the *Garcetti/Pickering* test are not met as to Plaintiffs' freedom of speech retaliation claim, because Plaintiffs do not allege either that they were speaking as private citizens (rather than as employees) or that their speech addressed matters of public concern.   Doc. 46 at 11.   Defendants further argue that "to the extent that the alleged harm is mere verbal warnings or job reassignments, as with Perkins and Garcia," or the "Notice of Contemplated Action proposing terminating Eric Allen's employment," Plaintiffs do not allege that they suffered adverse employment actions as the *Garcetti/Pickering* test requires, and thus that the FAC fails to state either a claim for freedom of speech retaliation or a claim for freedom of association retaliation.   *Id.* at 3, 9.   These arguments are unavailing.

Under the first prong of the *Garcetti/Pickering* test, "speech relating to tasks within an employee's uncontested employment responsibilities is not protected from regulation." *Brammer-Hoelter*, 492 F.3d at 1203.   In other words, "speech is made pursuant to official duties if it is generally consistent with the type of activities the employee was paid to do."   *Id.* Notably, however, not all speech "about the subject matter of an employee's work [is] necessarily made pursuant to the employee's official duties."   *Id.*   The court is instructed to take "a practical view of all the facts and circumstances surrounding the speech and the employment relationship."   *Id.*

Taking such a practical view, the Court finds that the FAC sufficiently alleges that the Individual Plaintiffs spoke as private citizens, rather than pursuant to their official duties at MDC, when making the statements for which they were allegedly retaliated against. Specifically, the FAC alleges as follows:   Allen's statements were made in his capacity as Vice President of the Union, Doc. 44 ¶¶ 23-24; Perkins's statements were made in his capacity as President of the Union, *id.* ¶¶ 33-34; Garcia's statements were made in his capacity as a witness on behalf of the Union in an arbitration proceeding brought against MDC, *id.* ¶ 50; and Cavis's statements were made in her capacity as a witness at a Board hearing brought by the Union against MDC, *id.* ¶¶ 67-69.   Defendants have provided no basis for the Court to conclude that making statements on behalf of the Union – and, in particular, statements critical of MDC management – were "generally consistent with the type of activities" that Allen, Perkins, Garcia, or Cavis were "paid to do" as correctional officers at MDC.   Indeed, courts have held that where, as here, a plaintiff's critical statements about his or her employer are alleged to have been made in his or her capacity as a union representative, those statements are not made pursuant to official duties but rather in the plaintiff's capacity as a private citizen.   *See Ellins v. City of*

17

*Sierra Madre*, 710 F.3d 1049, 1059 (9th Cir. 2013) ("Given the inherent institutional conflict of interest between an employer and its employees' union, we conclude that a police officer does not act in furtherance of his public duties when speaking as a representative of the police union."); *Fuerst v. Clarke,* 454 F.3d 770, 774 (7th Cir. 2006) ("Because Fuerst's comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff – his duties as deputy sheriff did not include commenting on the sheriff's decision to hire a public-relations officer – the Supreme Court's recent decision in *Garcetti[]* is inapposite."); *Hawkins v. Boone*, 786 F. Supp. 2d 328, 335 (D.D.C. 2011) ("[I]f Hawkins was truly speaking on behalf of the FOP, as this Court must credit at this stage, his speech was not 'made pursuant to his duties,' and thus would merit First Amendment protection."); *Baumann v. D.C.*, 744 F. Supp. 2d 216, 224 (D.D.C. 2010) ("Courts have recognized that when a public employee is acting in his capacity as a union leader his speech is protected by the First Amendment."); *see also Lopez v. City of Belen,* 469 F. Supp. 3d 1180, 1193 (D.N.M. 2020) (noting defendants' acknowledgement that, because plaintiff "sent the letter on behalf of the Union, he was speaking as a private citizen"). Consistent with those cases, and in the absence of any well-supported argument to the contrary, the Court finds that the FAC passes the first step of the *Garcetti/Pickering* analysis.

Under the second step, "[m]atters of public concern are those of interest to the community, whether for social, political, or other reasons." *Brammer-Hoelter*, 492 F.3d at 1205. "In determining whether speech pertains to a matter of public concern, the court may consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Id.* (citation omitted). "Statements revealing official impropriety usually involve matters of public

concern." *Id.* Notably, "[s]peech that seeks to expose improper operations of the government or questions the integrity of governmental officials clearly concerns vital public interests." *Conaway v. Smith*, 853 F.2d 789, 797 (10th Cir. 1988); *see also Brammer-Hoelter*, 492 F.3d at 1206 ("Speech concerning potential illegal conduct by government officials is inherently a matter of public concern."). On the other end of the spectrum, "speech that simply airs grievances of a purely personal nature typically do not involve matters of public concern," such as "grievances about internal department affairs, disputes over the term of employment, and workplace frustration." *Brammer-Hoelter*, 492 F.3d at 1205 (citations omitted). The court is instructed "to consider the content, form, and context of a given statement, as revealed by the whole record," in deciding what is a matter of public concern. *Id.* (citation omitted).

Considering the content, form, and context of the relevant statements, as pleaded in the FAC, the Court finds that Plaintiffs sufficiently allege that the speech for which they were allegedly retaliated against pertained to matters of public concern. Specifically, the FAC alleges as follows: Allen's statements conveyed to Union members his criticism of the management of MDC, namely, their "mismanagement of the facility" and their "adoption of an unsafe use of force policy, Doc. 44 ¶¶ 23-24; Perkins's statements conveyed to both the press and the County that he believed that MDC management should be transferred to the Sheriff's Department "due to mismanagement and lack of leadership at MDC," *id.* ¶¶ 33-34; Garcia's statements concerned the impropriety of Allen's termination, *id.* ¶ 50; and Cavis's statements concerned MDC's denial of her right to have a Union representative present at an investigatory interview in violation of applicable labor laws, *id.* ¶¶ 67-69. As pleaded, these statements were not limited to the speaker's own personal grievances, but rather were intended to convey "some impropriety on the part of [MDC management]." *Conaway*, 853 F.2d at 797. Indeed,

Defendants have provided no explanation for their assertion that the Individual Plaintiffs'

statements did not pertain to matters of public concern.   Because the statements at issue

expressed concerns with MDC "leadership style and other department-wide problems, not

private grievances," the FAC satisfies the second step of the *Garcetti/Pickering* test.   *Ellins*,

710 F.3d at 1058; *see also Sinfuego v. Curry Cty. Bd. of Cty. Comm'rs*, 360 F. Supp. 3d 1177,

1246-47 (D.N.M. 2018) (holding that correctional officer's statements expressing concerns

"about conditions, including safety and sanitation issues, at Curry Detention [Center]" pertained

to matters of public concern).

As to the implicit requirement that a plaintiff allege "a detrimental employment decision

or an adverse employment action," the Supreme Court made clear in *Rutan v. Republican Party*

*of Ill.*, 497 U.S. 62, 75 (1990), that "First Amendment Protection extends beyond employer

conduct amounting to termination of employment or the substantial equivalent."   *Couch*, 587

F.3d at 1223.   Specifically, the Court "recognized that promotions, transfers, recalls after layoff,

and hiring decisions are actionable conduct."   *Id.*   Thereafter, the Tenth Circuit "has

recognized that certain types of less severe conduct can be the basis for a First Amendment

claim."   *Id.* (citing, *inter alia*, *Schuler v. City of Boulder*, 189 F.3d 1304, 1310 (10th Cir. 1999)

(holding that removing an employee's job duties, issuing a written reprimand, giving a poor

performance evaluation, and transferring an employee can be actionable in the First Amendment

context)).   After a period of "confusion in our circuit as to what qualifies as an adverse

employment action in the context of First Amendment retaliation," in *Couch*, the Tenth Circuit

"clarified the parameters of First Amendment retaliation protection, explaining that [it]

consider[s] an employment action to be adverse in the First Amendment retaliation setting if it

would deter a reasonable person from exercising his First Amendment rights."   *Hook v. Regents*

*of Univ. of Cal.,* 394 F. App'x 522, 535 (10th Cir. 2010 (citing *Couch,* 587 F.3d at 1238.

Applying this test to the instant case, the Court finds that factual allegations in the FAC give rise to the reasonable inference that the actions allegedly taken in retaliation for the Individual Plaintiffs' statements would deter a reasonable person from exercising his or her First Amendment rights.   Specifically, the FAC alleges as follows:   Allen was given a notice of intent to terminate his employment, followed by a "Notice of Final Action" terminating his employment, and was frivolously referred to the Sheriff's Department for criminal prosecution by Rees and Fernandez, Doc. 44 at ¶¶ 23, 26, 29; Perkins was frivolously charged criminally after a referral from Rees and Fernandez, and although Rees and Fernandez knew of the indictment against him and the arraignment set in his case, failed to disclose this information to him, *id.* ¶ 46; Garcia was removed from his position as Defensive Tactics instructor and transferred to another position, *id.* ¶¶ 55-56; and Cavis's employment at MDC was terminated, *id.* ¶ 72.

Defendants appear to admit that the acts of terminating Allen and Cavis were adverse for purposes of the *Garcetti/Pickering* test, but disagree that Perkins or Garcia suffered similarly adverse employment actions.   But the Tenth Circuit in *Schuler* specifically held that removing an employee's job duties and transferring an employee can be actionable.   Here, Plaintiffs have alleged that removing Garcia from his position and transferring him to a new one resulted in "lost tangible employment benefits" and "a loss of reputation that will negatively impact his career."  *Id.* ¶ 57.   Accordingly, Plaintiffs have sufficiently alleged facts relating to the removal of Garcia from his position and his subsequent transfer to create the reasonable inference that these actions were adverse.   And Perkins was subject to what was allegedly a frivolous criminal prosecution, at the behest of Rees and Fernandez.   The Tenth Circuit has held

that "malicious prosecution can constitute adverse employment action," as "[a] criminal trial is necessarily public and therefore carries a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996). Thus, Plaintiffs have sufficiently alleged facts relating to the criminal prosecution of Perkins to create the reasonable inference that this, too, was adverse. The Court thus finds that, for purposes of both Plaintiffs' freedom of speech retaliation claim and Plaintiffs' freedom of association retaliation claim, the allegations in the FAC are sufficient to state an adverse employment action as to each of the Individual Plaintiffs, as implicitly required by *Garcetti/Pickering*.

Accordingly, Plaintiffs have adequately alleged their retaliation claims. It follows that Defendants have failed to demonstrate that they are entitled to dismissal for failure to state a claim on either Count I or Count II.

C.    Qualified Immunity

Having concluded that Plaintiffs have sufficiently alleged that their right to be free from retaliatory employment action based on their protected First Amendment activities was violated, the Court still must ask whether the right that Plaintiffs assert was "clearly established in law such that it put [D]efendants on notice of the impropriety of their alleged retaliation." *Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1333 (10th Cir. 2007). Considering the case law identified by Plaintiffs in their response, the Court has "little difficulty" answering this question in the affirmative. *Id.*

First, as the Tenth Circuit held in *Morfin v. Albuquerque Public Schs.*, "[t]he unconstitutionality of retaliating against an employee for participating in a union [is] clearly established." 906 F.2d 1434, 1439 (10th Cir. 1990). Such retaliation is precisely what

22

Plaintiffs allege in Count I.    Next, as the Tenth Circuit held in *Casey,* "[i]t has long been established law in this circuit that when a public employee speaks as a citizen on matters of public concern to outside entities despite the absence of any job-related reason to do so, the employer may not take retaliatory action."    473 F.3d at 1333.    Such retaliatory action is precisely what Plaintiffs allege in Count II.    Relevant to Count II, since 1988, it has been established in this Circuit that speech that "discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials in terms of content, clearly concerns matters of public import."    *Conaway*, 853 F.2d at 796.    Again, Plaintiffs allege that disclosing such impropriety motivated the speech at issue here.    And relevant to both Counts I and II, "the parameters of First Amendment retaliation protection" have been clear since 2009, when the Tenth Circuit held that an employment action is "adverse in the First Amendment setting if it would deter a reasonable person from exercising his First Amendment rights."    *Hook*, 394 F. App'x at 535.    There can be little question that the actions allegedly taken here, including notification of intent to terminate employment, actual termination of employment, referral for criminal prosecution, removal of duties and transfer of position, all would deter a reasonable person from exercising his or her First Amendment rights.    Further, as the Tenth Circuit found in *Schuler*, even before *Couch*, the Tenth Circuit's "application of the protective principles from *Rutan* had clearly established the contours of First Amendment rights so as to cover . . . deprivations less harsh than dismissal," including "removing job duties," giving "a written reprimand," and "involuntarily transferring" the plaintiff, all of which Plaintiffs allege here. *Schuler,* 189 F.3d at 1309.

The state of the law at the time of the misconduct alleged in the FAC thus gave the Individual MDC Defendants "fair warning" that their alleged misconduct was unconstitutional.

*Hope*, 536 U.S. at 74.   Accordingly, the Court finds the Plaintiffs have met their burden of showing "legal authority making it apparent that in light of pre-existing law a reasonable official would have known that the conduct in question violated the constitutional right at issue." *Lundstrom*, 616 F.3d at 1119.   It follows that dismissal at this stage based on qualified immunity is not warranted.

II.    <u>WPA Claim</u>

  In Count III, Plaintiffs assert a claim under the WPA against the County.   The WPA provides that it is unlawful for a public employer to "take any retaliatory action against a public employee because the public employee," *inter alia*, "communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act," or "provides information to, or testifies before, a public body as part of an investigation, hearing or inquiry into an unlawful or improper act."   N.M. Stat. Ann. § 10-16C-3.   For purposes of this provision, an "unlawful or improper act" is defined as "a practice, procedure, action or failure to act on the part of a public employer that: (1) violates a federal law, a federal regulation, a state law, a state administrative rule or a law of any political subdivision of the state; (2) constitutes malfeasance in public office; or (3) constitutes gross mismanagement, a waste of funds, an abuse of authority or a substantial and specific danger to the public."   N.M. Stat. Ann. § 10-16C-2.

  Plaintiffs allege that, based on the speech described above in addressing their First Amendment retaliation claims, the Individual Plaintiffs "communicated to the public employer and/or third parties regarding the 'unlawful or improper acts' committed by Defendant and/or Defendant's agents," and in response, "Defendant and/or its agents took 'retaliatory actions' against the Individual Plaintiffs."   Doc. 44 ¶¶ 92-93.   According to Defendants, this claim fails

because the WPA's "protections are limited in scope to whistleblower communications which benefit the public or pertain to matters of public concern," and conversely do not protect "communications regarding personal personnel grievances that primarily benefit the individual employee."   Doc. 46 at 15.   Based on this principle, Defendants argue (without explaining why) that the allegations in the FAC are insufficient to state a WPA claim.   *Id.*

As Defendants argue (and Plaintiffs do not dispute), the New Mexico Court of Appeals held in *Wills v. Board of Regents of UNM*, that, consistent with federal courts' interpretation of the federal whistleblower law, only whistleblowing "that benefits the public by exposing unlawful and improper actions by government employees" is protected by the WPA.   357 P.3d 453, 457-58 (N.M. Ct. App. 2015).   Accordingly, under *Wills*, allegations of "personal personnel grievances that primarily benefit the individual employee" would be insufficient to state a WPA claim.

However, as the Court explained above, the FAC sufficiently alleges that the speech for which the Individual Plaintiffs were allegedly retaliated against pertained to matters of public concern.   This finding applies equally in the context of Plaintiffs' WPA claim.   As pleaded, the Individual Plaintiffs' statements were not limited to the speaker's own "personal personnel grievances," but rather were intended to "benefit the public by exposing unlawful and improper actions by government employees."   *Id.*   Indeed, Defendants have provided no explanation for their conclusory assertion that the Individual Plaintiffs' statements did not pertain to matters of public concern.

Because the statements at issue expressed public concerns with MDC management and facility-wide problems, as opposed to private grievances that primarily benefitted the Individual Plaintiffs, the FAC satisfies the pleading standard set forth in *Wills*.   Dismissal of Count III for

failure to state a WPA claim thus is not warranted.

## CONCLUSION

For the foregoing reasons, Defendants have not demonstrated that dismissal of any of the

Counts of the FAC is warranted.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss the First

Amended Complaint for Failure to State a Claim and for Qualified Immunity [Doc. 46] is

**DENIED**.


DATED this 5th day of March 2021.

_____
MARTHA VAZQUEZ
United States District Judge

26